UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALMA TRADE LLC., a Florida Corporation,

                      *Petitioner,*                    21 MC 675

      -v-

UNITED STATES OF AMERICA,

                      *Respondent.*

-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO QUASH INTERNAL REVENUE
## SERVICE SUMMONSES FOR BANKING INFORMATION

This memorandum is submitted in support of Alma Trade LLC's ("Alma") motion to quash three IRS summons to Alma's banks for banking information for the period 2018 and 2019.

Pursuant to 26 U.S.C. § 7609(b)(2) we seek to quash the three third-party summonses served by the Internal Revenue Service upon:

    a. JPMorgan Chase Bank LLC (Exhibit A to accompanying Declaration) (Issued July 22, 2021; notice to Alma LLC dated July 26, 2021)
    b. Santander, N.A. (Exhibit B to accompanying Declaration) (issued July 27, 2021; notice to Alma dated July 28, 2021)
    c. TD Bank (Exhibit C to accompanying Declaration) (Issued July 22, 2021; notice to Alma dated July 26, 2021 )

**Jurisdiction and Venue**. This Court has jurisdiction pursuant to 26 U.S.C. § 7609(b)(1) and (h)(1). Venue is proper in this District pursuant to § 7609(h)(1) because the summoned entities -- all national banks -- may be found in this District.

**The Parties**. Petitioner Alma Trade LLC is a limited liability company registered in the State of Florida. Konstantin Terekhov is the principal of Alma Trade LLC. Respondent is the

1

United States of America. The entities summoned by the IRS are: JPMorgan Chase Bank, Santander Bank and TD Bank.

**Background**. This motion, of necessity, is bare-boned and will be supplemented, if appropriate, because the undersigned's law firm was first contacted on or about Saturday, August 14, 2021.[1] On Monday, August 16, 2021, concerned about the statutory 20-day period to move to quash, I called the IRS Issuing Officer, Peter G. Woodburn, whose voice mail directed me to IRS Approving Officer Floyd B. Penn, Jr. Mr. Penn and I agreed to a 30-day extension to move to quash the summonses, which I memorialized in an email, as follows:

> Thank you for speaking with me this afternoon and for agreeing to a 30-day extension of the time to file any motions to quash, etc., regarding the various requests for information, etc., served on A[l]ma Trade LLC and its banks with regard to the investigation of JSC Topprom.

Mr. Penn responded by email:

> Dear Atty. Levitt –
>
> We acknowledge receipt of your email and the attached F2848.
> Thank you for your consideration

Exhibit D.

This morning, August 17, 2021, I spoke with Mr. Woodburn, and confirmed the arrangement I had made with Mr. Penn. Nonetheless, this afternoon Mr. Woodburn called me, at approximately 2:50 pm, saying that Mr. Penn had misunderstood our agreement and that the 30-day extension he had agreed to related only to the time by which we might move to quash the Information Document Request served on Alma. While I do not at all question the good faith of Mr. Penn and Mr. Woodburn, both of whom have been entirely courteous and professional when

---

[1] We are endeavoring to determine when Defendant served a copy of each Summons upon Plaintiffs and will supplement these papers with such information upon receipt.

2

we spoke, the email confirmation I sent Mr. Penn makes crystal clear our agreement that the IRS had granted us a 30-day extension of the time to file, *inter alia*, the "various requests for information, etc., served on A[l]ma Trade LLC **and its banks** with regard to the investigation of JSC Topprom." (Exhibit D) (emphasis added). His response likewise reflects he understood the terms of our agreement.

The Summonses, served pursuant to the U.S. - Russia Income Tax Convention ("Tax Convention") Article 25,[2] state they are issued with regard to "In the Matter of The Russian Income Tax liabilities of JSC Topprom." On information and belief, JSC Topprom is a large, Russian-based coal company, employing some 2600 people.[3]

Our client, Alma, is a Limited Liability Company registered in Florida with an address of 304 Indian Trace 379, Weston, FL 33326.

The aforesaid three summonses seek banking records with regard to Alma Trade LLC's accounts at each bank as follows:

> You are hereby directed to personally appear at the time and place listed on the face sheet of this summons to give testimony under oath regarding JSC TOPPROM, and to bring with you copies of all of the following documents, records, and information, including electronically stored information, in your possession, custody, or control pertaining to acct# 3691102107 that may be owned, controlled, or under the signatory authority of ALMA TRADE LLC for the period from January 1, 2018 through December 31, 2019, even if the document is dated outside of such period.
>
> DOCUMENTS TO BE PRODUCED
>
> 1. Account opening and closing documents (regardless of date);
> 2. Account signature cards (regardless of date);
> 3. Know-Your-Customer and Customer Due Diligence records, as required to be collected and maintained under the law (regardless of date);

---

[2] Viewable at: https://www.irs.gov/pub/irs-trty/russia.pdf

[3] See http://top-prom.ru/en/company/topprom_today/

3

4. Monthly account statements;
5. Correspondence (including e-mail) and memorandum files related to the account ( excluding marketing material).
6. Details regarding any linked accounts.

The aforementioned Tax Convention is a bilateral agreement between the United States and Russia, pursuant to which each country pledges assistance to the other with respect to the collection of certain taxes. Article 25, pursuant to which authorize the Summonses were served, provides in relevant part:

ARTICLE 25
Exchange of Information

1. The competent authorities of the Contracting States shall exchange such information as is necessary for carrying out the provisions of this Convention or of the domestic laws of the Contracting States concerning taxes covered by the Convention insofar as the taxation thereunder is not contrary to the Convention. The exchange of information is not restricted by Article 1 (General Scope). Any information received by a Contracting State shall be treated as confidential in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment, collection, or administration of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes covered by the Convention. **Such persons or authorities shall use the information only for such purposes.** They may disclose the information in public court proceedings or in judicial decisions.

2. **In no case shall the provisions of paragraph 1 be construed so as to impose on a Contracting State the obligation**:
   a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;
   b) to supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;
   c) **to supply information which would disclose any trade, business, industrial, commercial, or professional secret or trade process, or information the disclosure of which would be contrary to public policy.**

(emphasis added)

### The Summonses Should Be Quashed

#### A. **The notice to Alma was untimely.**

Section 7609(a)(1) of the Internal Revenue Code requires that notice must be given to any person identified in the summons "within 3 days of the day on which such service is made, but no

4

later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined." 26 U.S.C. § 7609(a)(1). However, if the last day for performing an act falls on Saturday, Sunday, or a legal holiday, the performance of that act is timely if it is performed on the next succeeding that is not a Saturday, Sunday, or legal holiday. *Id.* § 7503. Here, the summonses to JPMorgan Chase and TD Bank were dated July 22, 2021, but the notices to Alma are dated July 26, 2021 – four days later. Although July 25 (the third day following July 22) was a Sunday, we have not yet ascertained with certainty when the Summonses were in fact issued and when they were in fact served. Thus far, however, on information and belief, Alma first became aware of the IRS mailings containing the Summonses when its accountant retrieved them from Alma's mail in Florida on August 6. The accountant scanned the documents and forwarded them to Mr. Terekhov. We therefore retain our right to assert, as we do, that notice was untimely.

### B. The Summonses do not seek relevant information.

Thus far the IRS has declined to provide us the papers it received from Russia ostensibly justifying the issuance of the summonses. However, we assert Russia does not have a good faith belief that Alma's banking records will reflect anything of relevance to any proper investigation of Topprom. On the contrary, we suggest those records will show no transactions with Topprom.

### C. The Summonses are Overbroad.

Although the Summonses purport to seek information "regarding JSC TOPPROM" their request for information is not limited to those documents, or those portions of documents that concern TOPPROM but rather demand that the summoned banks produce documents that on their face would not conceivably contain information regarding TOPPROM, nor do they seek – as they should – only those portions of the summoned records that might reflect matters relevant to the inquiry of TOPPROM.

5

For example, the Summonses seek such documents as "opening and closing documents," signature cards, and all correspondence related to the accounts, etc., regardless of whether these documents have anything whatever to do with TOPPROM and may, at most, contain merely scattered, incidental entries relating to TOPPROM. Additionally, the Summonses are unduly vague to the extent they demand "details regarding linked accounts" – a request not susceptible to reasonable interpretation and which also suffers from the aforementioned overbreadth.

> **D. The United States must carefully scrutinize any request for information from Russia, which has been known to utilize its tax laws as ruses to take over companies; without such scrutiny Russia's use of the Tax Treaty violates Article 25, subd. 2's prohibition against requiring disclosures "contrary to public policy."**

Numerous news reports in the West have addressed Russia and Vladimir Putin's theft of companies by initiating bogus investigations, resulting in the prolonged detention of executives, and seizures of assets. The most notable example is that of Yukos oil, which was the subject of Congressional hearings and included remarks by Yukos CEO Steve Theede detailing Russia's seizure strategy:

> We've seen, Mr. Chairman, a ruthless and unprecedented campaign by the Russian Government against Yukos, carried out by way of dubious and discriminatory taxes, illegal expropriation of property, arrests, and individual intimidation. A modern, globally respected company has been dismantled by a series of carefully timed and politically motivated attacks by the Russian Government.
>
> XXX
>
> First, government officials instructed tax authorities to make a tax case against Yukos. The tax claims are a contrivance without merit or precedent. They are based on a selective and retroactive application of Russian tax laws, and on fines and penalties that are unconstitutional. [4]

---

4 https://www.govinfo.gov/content/pkg/CHRG-109shrg22751/html/CHRG-109shrg22751.htm

6

This practice, incredibly, is not some well-kept secret, but rather something President Putin has admitted in meetings with judges, as reported by Bloomberg News:

> At a meeting with judges in 2015, Putin said 200,000 business-related criminal cases had been opened the year before, of which only 46,000 had reached the court. Yet 83 percent of businessmen involved in the 200,000 cases had lost their businesses, he said.
>
> "They were intimidated, robbed and then released," Putin said. Asked at a December news conference why Russia had separate justice systems for Putin loyalists and everyone else, the president responded, "I agree that we have problems, but I can't agree that we have different legal realities in our country."[5]

Notwithstanding efforts by groups like Russia Behind Bars to free the arrestees, by the time release is achieved the defendant will have already lost his or her business. *Id.* These tactics are, typically, applied against successful companies, which, at the very least, raises the substantial likelihood that Topprom is yet another target, as it has emerged as a top coal producer thanks to its revamping of a once defunct mine,[6] and its director, as well as subsidiaries, have been charged with various tax offenses in Russia.[7] Based on our conversations with the IRS, the investigation into Topprom is civil in nature.

The recent history of Russia and Vladimir Putin is marked by a willingness to bring trumped-up charges against companies it seeks to target for takeover, either by the Russian

---

[5] https://www.bloomberg.com/news/features/2018-01-29/when-russian-officials-nightmare-your-business-you-can-lose-everything-even-your-life

[6] https://ecocarbonltd.com/2021/05/russian-coal-exports-up-12-8-in-q1-2021/; http://top-prom.ru/en/press-center/news/yubileynaya_reopened/

[7] https://translate.google.com/translate?hl=en&sl=ru&tl=en&u=https%3A%2F%2Fcompromat.group%2Fmain%2Fcriminal%2F30596-beglyy-milliarder-kto-pomogaet-beglomu-ugolschiku-evgeniyu-renge-v-reyderskoy-atake-na-topprom-v-kuzbasse.html&prev=search
https://translate.google.com/translate?hl=en&sl=ru&u=https://www.finanz.ru/novosti/aktsii/delo-ob-uklonenii-ot-uplaty-47-5-mln-rubley-nalogov-pri-sbyte-uglya-vozbuzhdeno-v-kuzbasse-1030498672&prev=search&pto=aue ;
https://translate.google.com/translate?hl=en&sl=ru&u=https://tass.ru/sibir-news/11648997&prev=search&pto=aue

government or by Putin himself. Their theft of Russian businesses through implicit or explicit threats and through the use of trumped-up investigations and prosecutions – including tax investigations -- is well known and documented in numerous publications.[8] By permitting the Russian government to use the United States as its agent to carry out domestic investigations of Russian corporations without deep scrutiny and skepticism reflects nothing less than conscious avoidance of this reality, and turns our government into Putin's enabler. Blind enforcement of these subpoenas without assurance that our government is not being used as tool for thievery would violate Article 25's prohibition against the use of the Treaty in a manner <u>contrary to public policy.</u>

---

[8] *See, e.g.,* Vladimir Putin and The Big Steal:"Every country has its own mafia. In Russia, the mafia has its own country, by Gavin Esler, thelondoneconomic.com, May 4, 2020. https://www.thelondoneconomic.com/politics/vladimir-putin-and-the-big-steal-186369/; Why Russia's Onetime Richest Man Won't See A Penny Of The $50 Billion Putin 'Destroyed', by David Dawkins, forbes.com, February 19, 2020. https://www.forbes.com/sites/daviddawkins/2020/02/19/why-russias-one-time-richest-man-wont-see-a-penny-of-the-50-billion-putin-destroyed/?sh=6bf0c0563840; When Russian Officials 'Nightmare' Your Business, You Can Lose Everything—Even Your Life, by Leonid Ragozin, Bloomberg.com, January 29, 2018, https://www.bloomberg.com/news/features/2018-01-29/when-russian-officials-nightmare-your-business-you-can-lose-everything-even-your-life

8

## Conclusion

For the foregoing reasons the Summonses issued to JPMorgan Chase, Santander and TD Banks should be **QUASHED**.

Dated: August 17, 2021

                                              Respectfully submitted,

                                              Richard Levitt, Esq.
Levitt & Kaizer
rlevitt@landklaw.com
40 Fulton Street, 17th Floor
New York, N.Y. 10038
Tel. 212 480-4000
rlevitt@landklaw.com
*Counsel for Movant*
*ALMA TRADE LLC*